## Commonwealth v. Ryder

*Karen Byrnes, assistant district attorney,* for the Commonwealth.

*Frederick J. Fanelli,* for defendant.

RUBRIGHT, *J.,* March 13, 1992—This matter is presently before the court on a motion in limine filed by the defendant in which he requests the court to find that DNA test results are inadmissible at the defendant's trial on charges of rape and indecent assault. A hearing was held and we are now prepared to dispose of the matter.

The charges against the defendant resulted from an incident which allegedly took place on July 28, 1990. On that date, the victim and the defendant were both guests at a wedding reception in Fountain Springs. They did not know one another. While at the reception, the victim met a young man by the name of Justin Blume. Shortly after they met, the victim and Blume went outside to the rear of the reception hall where they engaged in "heavy petting." Both deny having intercourse. After approximately a half-hour, the defendant approached the victim and Blume and told Blume that his parents were looking for him. The defendant then walked away. He returned a few minutes later and again told Blume that his parents were looking for him. Blume left and the

defendant stayed behind with the victim. It was then that the alleged rape took place.

During the rape investigation which followed, both the defendant and the victim gave samples of their blood for DNA analysis. The DNA extracted from the known samples was to be compared with DNA extracted from evidence obtained from the victim on the date of the alleged rape, specifically her panties, pantyhose and genital swabbings.

Audrey Lynch, an FBI special agent who conducted the DNA profile, testified as an expert in the field about the procedure used, both generally and in this case. The profile which she conducted indicated that DNA extracted from the pantyhose matched that of the defendant. There was insufficient DNA recovered from the panties and the genital swab to produce a conclusive result.

The defendant has requested the court to find the results of the DNA profile inadmissible on the grounds that they are unreliable and that the scientific method employed has not gained general acceptance in the scientific community. Before scientific evidence may be considered admissible, it must first be shown that it meets the standard established in *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013 (1923). *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977). The scientific method under attack by the defendant is known as deoxyribonucleic acid restriction fragment length polymorphism analysis. The theory and methodology behind DNA/RFLP testing derives from the fields of molecular biology, genetics, and a specialized branch of genetics known as population genetics. *People v. Wesley,* 140 Misc. 2d 306, 533 N.Y.S.2d 643 (1988). The scientific basis for the testing

lies in the fact that each individual has an entirely unique "genetic signature" because the DNA configuration is different for each individual except identical twins. *Id.* As testified to by Agent Lynch, the evidence is the product of a complex laboratory analysis comprised of six steps: (1) extraction; (2) fragmentation; (3) gel electrophoresis; (4) Southern blotting; (5) hybridization; and (6) autoradiographing. Our Superior Court recently held that evidence adduced by DNA/RFLP analysis is scientifically valid and satisfies the *Frye* standard made applicable in Pennsylvania by *Commonwealth v. Topa, supra. Commonwealth v. Rodgers,* 413 Pa. Super. 498, 605 A.2d 1228 (1992).

Defense counsel indicated at the hearing that he does not strenuously object to the admissibility of DNA profile evidence generally, but he does object to its admissibility in this case because he believes the semen was not properly preserved and its exposure to any number of environmental insults may have affected the reliability of the results. Agent Lynch testified that DNA is very stable and is not affected by the environmental insults, such as bacteria, sunlight or heat, cited by defense counsel. Furthermore, she made clear that if the environmental insults cited by defense counsel did affect the stability of DNA, it would not result in a false positive. One either achieves a correct result or no result using the methods employed by the FBI in its DNA Analysis Unit. Agent Lynch's testimony is supported by the reports of validation studies submitted to the court by the Commonwealth. Based upon Agent Lynch's testimony, we conclude that the test results are admissible in this particular case.

Finally, the defendant argues that the prejudicial effect of the evidence outweighs its probative value and it should be excluded on those grounds. We disagree. The ad-

missibility of the scientific evidence has been established and the fact that the DNA which provided the match to that extracted from the defendant's blood came from the crotch of the victim's pantyhose is certainly probative of some contact by the defendant with the victim, whether it be consensual or otherwise.

Accordingly, we find the DNA test results to be admissible and we enter the following

## ORDER OF COURT

And now, March 13, 1992, at 10:15 a.m., after hearing on the defendant's motion in limine and careful consideration of the evidence produced, the court finds that the results of the DNA/RFLP analysis are admissible at trial.